**Juan C. Chavez**, OSB #136428
**Hannah Bland**, OSB #252404
**Walter Fonseca**, OSB #136349
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-328-3982

    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| THE ESTATE OF NATHAN BRADFORD SMITH and JENNIFER SMITH, *Personal Representative,*<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF COOS BAY; BENJAMIN MARTIN; TRISTAN SMITH; WESLEY O'CONNOR; and JOHN DOES 1-20,<br><br>    Defendants. | Case No. 6:25-cv-1388<br><br>COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983); and State Tort Actions (Wrongful Death; Negligence *Per Se*; and Abuse of a Vulnerable Person)<br><br>JURY TRIAL DEMANDED |

    This is a civil rights action against the above-named actors concerning their unconstitutional, negligent, and abusive treatment of Mr. Nathan Bradford Smith, a person in their custody and care, resulting in his death. Plaintiff's Estate, personally represented by his mother, Jennifer Smith, now seeks money damages for the death of her son. When Defendants encountered a man in clear medical distress, instead of adhering to their constitutional and statutory duties to render aid and call for emergency services, they arrested him and put him in

the back of a police car. Defendant Martin then left Mr. Smith unattended in the back of his patrol car while he went into the precinct and scrolled through TikTok. All told, Defendants delayed Mr. Smith from getting treatment for approximately 40 minutes. Mr. Smith died in the hospital. Defendant City of Coos Bay's agents' actions and inactions also constitute negligence, negligence *per se*, and abuse of a vulnerable person.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), (4); and supplemental jurisdiction over all state and common law claims under 28 U.S.C. § 1367.

## VENUE

2. Venue is proper within the District of Oregon because the events giving rise to this claim occurred in this judicial district. *See* 28 U.S.C. § 1391(b). The acts and practices alleged herein predominantly occurred in the City of Coos Bay, Coos County, Oregon.

## PARTIES

3. Plaintiff Jennifer Smith is a citizen of the State of Oregon and is the personal representative of the Estate of Nathan Smith. She is Mr. Smith's mother.

4. Plaintiff The Estate of Nathan Smith is an estate administered in the State of Oregon. *In the Matter of: Nathan Bradford Smith*, Coos County Court Case No. 25PB04016 (2025).

5. Defendant City of Coos Bay is a municipal corporation in the State of Oregon with the capacity to sue and be sued under the Oregon Tort Claims Act. The Coos Bay Police Department (CBPD) is a subdivision of the City of Coos Bay.

6. Defendant Benjamin Martin was a police officer with the Coos Bay Police Department at the time of the allegations below. At all relevant times he was acting under color of law and is sued in his individual capacity.

7. Defendant Tristan Smith is an officer with the Coos Bay Police Department. At all relevant times he was acting under color of law and is sued in his individual capacity.

8. Defendant Wesley O'Connor is an officer with the Coos Bay Police Department. At all relevant times he was acting under color of law and is sued in his individual capacity.

9. Plaintiff does not know the true names and capacities of Defendants sued herein as John Does 1-20, and therefore sues these Defendants by fictitious names. John Does 1-10 are sued in their individual capacities and are City of Coos Bay personnel who were personally involved with the allegations made below, conspired with, aided and abetted, and/or directly or indirectly participated in Plaintiff's deprivation of civil rights as hereinafter alleged. John Does 11-20 are sued in their individual capacities and are City of Coos Bay personnel who exercised command responsibility over, conspired with, aided and abetted subordinates, and/or directly or indirectly participated in Plaintiff's deprivation of civil rights as hereinafter alleged.

## FACTUAL ALLEGATIONS

10. Mr. Nathan Smith was a 33-year-old man, who, at the time of his death, was residing in Coos Bay, OR. Mr. Smith had been suffering from mental health and substance issues.

11. On July 7, 2024, Coos Bay Police Department (CBPD) Officers interacted with Mr. Smith multiple times. CBPD received three calls for service regarding Mr. Smith at different locations in Coos Bay. In responding to the first two calls, officers spoke with Mr. Smith then disengaged. Mr. Smith appeared to be smoking methamphetamine during their first interaction.

During their second interaction, Mr. Smith spoke quickly and incomprehensibly, and his eyes were fluttering rapidly.

12.     The officers' third interaction with Mr. Smith occurred in the late afternoon at 1445 N Bayshore Drive (Motel 6), where Mr. Smith was lying on the sidewalk, partially in front of the roadway. One of the 911 callers indicated they were concerned for Mr. Smith's safety. Another caller indicated that Mr. Smith was on the ground "flailing around."

13.     Dash Camera footage from Defendant Martin's vehicle shows the following.



*Figure 1*. Mr. Smith is depicted in lower half of the picture, lying on his back.

14.     Officers arrived on the scene at 5:01 PM. Nathan Smith was on the ground on his back, flapping his arms back and forth. He was wearing rain pants and a heavy coat.

15.     Defendant Officers Martin, Smith, and O'Connor arrived at approximately the same time. Police radio traffic claimed that officers and Mr. Smith were fighting. On the contrary, body-worn camera footage clearly showed that Mr. Smith did not resist arrest.

16. Defendants Martin and O'Connor aggressively grabbed his arms and legs and forced Mr. Smith into a stress position in order to handcuff him. Defendant Smith joined the other Defendants in pinning Mr. Smith to the ground. Defendant O'Connor is heard over the radio stating "Get your hand away from me you weirdo" during the arrest.



*Figure 2*. Defendants twisting Mr. Smith's arm while rolling him onto his stomach.

17. In Defendant O'Connor's body worn camera footage, Mr. Smith can be heard panting quickly and heavily.

18. At this juncture, it would be clear to any reasonable officer that Mr. Smith was suffering from a medical episode and needed to be assessed by medical professionals. Instead, the officers decided to take Mr. Smith into custody on a dubious "Disorderly Conduct 2" charge.

19. Disorderly Conduct in the Second Degree is an intent crime whose elements require the defendant to have the "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof…" ORS 166.025. Mr. Martin was clearly incapacitated and incapable of

forming the requisite mental state to meet the statutory elements here. Nevertheless, Defendants decided to take Mr. Smith into custody on this charge.

20.     Dash camera footage shows that from the moment Mr. Smith was placed in Defendant Martin's vehicle at 5:05 PM, Mr. Smith displayed signs of being in a medical crisis. Mr. Smith struggled to move his own body into the car, and his breath was rapid and exaggerated. The footage shows Mr. Smith gasping for air at times, with his eyes closed. Defendant Martin pulled over before leaving Motel 6 and sprayed air freshener into the cargo area of his vehicle while Mr. Smith appears to slump over in the back of his patrol car. The car departs from Motel 6 at 5:10 PM.



*Figure 3*. Mr. Smith in the backseat of Defendant Martin's vehicle, struggling to breathe.

21. At 5 PM on July 7, 2025, the weather was sunny and the temperature in Coos Bay was approximately 68 degrees Fahrenheit. Defendant Martin's windows did not work properly, so they were not rolled down. On the three-minute car ride to CBPD, Mr. Smith slumped further down in his seat.

22. Defendant Martin arrived at CBPD at about 5:13 PM. He sprayed the front area of his vehicle with air freshener and entered the police department with Mr. Smith still in the back seat of his vehicle with the windows closed.

23. While in CBPD headquarters, Defendant Smith scrolled on his phone, reviewed and responded to intimate text messages, and looked at TikTok for several minutes.

24. Mr. Smith at the same time was shaking uncontrollably and gasping for breath.

25. Defendant Martin finally returned to his vehicle at 5:21 PM. He checked on Mr. Smith in the back seat and found him unconscious. Defendant Martin began performing sternal rubs on him. Mr. Smith did not respond to the sternal rubs. Defendant Martin then retrieved Narcan from the rear of his vehicle, administered it, and finally called for medical attention.



*Figure 4*. Defendant Martin rubbing Mr. Smith's sternum.

26. An ambulance arrived on scene at 5:24 PM. EMTs extracted Mr. Smith from the car, and Defendant Martin removed Mr. Smith's handcuffs. EMTs treated Mr. Smith at the scene for 20 minutes. They departed for Bay Area Hospital at 5:44 PM and arrived at the hospital at 5:51 PM.

27. Mr. Smith's temperature reading both in the ambulance and at the hospital was over 107 degrees Fahrenheit. The EMTs immediately noticed that Mr. Smith was wearing heavy layers of clothing, despite the warm summer weather, and removed the layers.

28. Mr. Smith entered cardiac arrest at approximately 5:53 PM at the emergency department of Bay Area Hospital. Despite aggressive resuscitation efforts at the hospital, Mr. Smith was declared deceased at 6:25 PM. His cause of death was listed as "hyperthermia due to Methamphetamine intoxication and probable exogenous contribution from wearing multiple layers of heavy clothing."

29. All officers involved in Mr. Smith's arrest admitted in their statements to the Oregon State Police that they knew about Mr. Smith's history of drug use and mental illness. Mr. Smith's behavior upon officers' arrival at Motel 6 on July 7, 2024, was consistent with psychosis and stimulant overdose. Defendant Smith had even witnessed Mr. Smith attempting to smoke Methamphetamine in front of him earlier in the day.

30. The Bay Area Hospital Emergency Department is approximately 1.5 miles Northeast of Motel 6 where Mr. Smith was arrested, and a five-minute car ride away. The Coos Bay Police Department is approximately one mile from Motel 6 in the opposite direction, and a three-minute car ride away. Had officers taken Mr. Smith directly to Bay Area Hospital from Motel 6 or called an ambulance to the scene, emergency department staff would have had over 40 minutes to stabilize Mr. Smith prior to the time he suffered cardiac arrest.

31.     Upon information and belief, 40 minutes would have been an adequate amount of time to stabilize Mr. Smith and save his life.

32.     Mr. Smith is survived by his mother, Plaintiff Jennifer Smith, who is also serving as the personal representative of his estate, and his father, Kurt Smith.

33.     They both love and miss their son dearly.

34.     In his final moments in Defendant Martin's vehicle, gasping for air while Defendant Martin scrolled TikTok, Mr. Smith was clearly suffering physically, mentally, and emotionally. His death from hyperthermia likely caused him great physical pain and distress.

### Claim 1
### (42 U.S.C. § 1983: Deliberate Indifference to a Serious Medical Need and Substantial Risk for a Pretrial Detainee—against the Individual-Officer Defendants)

35.     Plaintiff re-alleges and incorporates Paragraphs 1 through 34.

36.     All individually-named Defendants, Martin, Smith, O'Connor, and John Does 1-20, are persons under within the meaning of 42 U.S.C. § 1983.

37.     The individually-named Defendants were deliberately indifferent to Mr. Smith's serious medical need or otherwise serious risk of harm in not calling for medical attention or otherwise rendering aid to a person with Mr. Smith's conditions in their custody—particularly, Defendants failed to ensure that a restrained person with symptoms of overdose, respiratory distress, cardiac episode, or otherwise serious medical distress is seen by medical professionals immediately, as required by ORS 133.518; punished instead of treated a person undergoing a serious medical incident; and abandoned a restrained person with symptoms of overdose, respiratory distress, cardiac episode, or otherwise serious medical distress unattended in the back of a police vehicle. In taking these actions, Defendants were deliberately indifferent to Mr. Smith's serious medical needs and were deliberately indifferent to a serious risk of harm to him, in violation of his right

to be free from cruel and unusual punishment under the Fourteenth Amendment of the United States Constitution.

38.     The individual Defendants acted with malice or with reckless disregard when they detained Mr. Smith and left him to die in a police vehicle. Plaintiff seeks punitive damages against these Defendants in an amount sufficient to punish a defendant and to deter similar acts in the future.

39.     Because of the individually-named Defendants' violations of Mr. Smith's rights, Plaintiff suffered death. Defendants' actions and inactions are the direct and proximate cause of Mr. Smith's death, bodily injury, pain, suffering, loss of liberty, mental and emotional suffering, expenses, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiffs are entitled to all of their damages in an amount to be ascertained according to proof at trial.

### Claim 2
### (42 U.S.C. § 1983: State-Created Danger—against the Individual-Officer Defendants)

40.     Plaintiff re-alleges and incorporates Paragraphs 1 through 39.

41.     All individually-named Defendants — Martin, Smith, O'Connor — and John Does 1-20, are persons under within the meaning of 42 U.S.C. § 1983.

42.     The individually-named Defendants made the affirmative decision to restrain Mr. Smith and place him in the back of a police car after encountering him despite knowledge that he was suffering from obvious symptoms of overdose, respiratory distress, cardiac episode, or otherwise serious medical distress.

43.     This affirmative act placed Mr. Smith in a position of an actual, particularized danger by creating or exposing Mr. Smith to death from overdose.

44.     The individually-named Defendants were deliberately indifferent to this actual, particularized danger—particularly, Defendants failed to ensure that a restrained person with

symptoms of overdose, respiratory distress, cardiac episode, or otherwise serious medical distress is seen by medical professionals immediately, as required by ORS 133.518; punished instead of treated a person undergoing a serious medical incident; and left a restrained person with symptoms of overdose, respiratory distress, cardiac episode, or otherwise serious medical distress unattended in the back of a police vehicle.

45. This deliberate indifference to the actual, particularized danger caused Mr. Smith's death, in violation of his right to be free from state-created danger under the Fourteenth Amendment of the United States Constitution.

46. The individual Defendants acted with malice or with reckless disregard when they detained Mr. Smith and left him to die in a police vehicle. Plaintiff seeks punitive damages against these Defendants in an amount sufficient to punish a defendant and to deter similar acts in the future.

47. Because of the individually-named Defendants' violations of Mr. Smith's rights, Plaintiff suffered death. Defendants' actions and inactions are the direct and proximate cause of Mr. Smith's death, bodily injury, pain, suffering, loss of liberty, mental and emotional suffering, expenses, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiffs are entitled to all of their damages in an amount to be ascertained according to proof at trial.

### Claim 3
### (State Torts: Wrongful Death/Negligence *Per Se*/Abuse of a Vulnerable Person—against City of Coos Bay)

48. Plaintiffs reallege paragraphs 1 through 47.

49. Defendant City of Coos Bay retains control of the Coos Bay Police Department and its agents. They are liable for these agents' actions or inactions under the Oregon Tort Claims Act.

**Count 1: Wrongful Death**

50.     As alleged above, because Defendant City of Coos Bay's agents ignored the obvious signs and symptoms of overdose and decided to detain Mr. Smith instead of rendering medical aid, it was foreseeable that failing to act reasonably would end in Mr. Smith's death.

51.     Failing to train and discipline its police officers in the appropriate treatment of people with Mr. Smith's condition is unreasonable given the grave risk of severe harm to the public, and to Mr. Smith.

52.     In particular, Defendants negligently failed to ensure that a restrained person with symptoms of overdose, respiratory distress, cardiac episode, or otherwise serious medical distress is seen by medical professionals immediately, as required by ORS 133.518; punished instead of treated a person undergoing a serious medical incident; failed to train or discipline officers to adhere to ORS 133.518; and left a restrained person with symptoms of overdose, respiratory distress, cardiac episode, or otherwise serious medical distress unattended in the back of a police vehicle.

53.     It was reasonably foreseeable that Defendant City of Coos Bay's agents' actions as detailed above would create a substantial risk of injury or death to Mr. Smith.

54.     Defendant City of Coos Bay is liable for the conduct of their agents. Plaintiffs are entitled to all of their damages, including ORS 30.020(2)(a)-(e) damages, in an amount to be ascertained according to proof at trial.

**Count 2: Negligence *Per Se***

55.     Plaintiffs reallege paragraphs 1 through 54.

56.     ORS 133.518 creates an affirmative duty for police officers to request emergency medical services when they are in custody of or encounter a restrained person "suffering a

respiratory or cardiac compromise." Mr. Smith was immediately within their custody, non-combative, and restrained, leaving no exception to this affirmative duty.

57. Because, as alleged above, Defendant City of Coos Bay's agents violated this law, they were negligent *per se*.

58. Defendant City of Coos Bay is liable for the conduct of their agents. Plaintiffs are entitled to all of their damages, including ORS 30.020(2)(a)-(e) damages, in an amount to be ascertained according to proof at trial.

**Count 3: Abuse of a Vulnerable Person**

59. Plaintiffs reallege paragraphs 1 through 58.

60. ORS 124.100(2) provides that, "a vulnerable person who suffers injury, damage or death by reason of physical abuse… may bring an action against any person who has caused the physical… abuse or who has permitted another person to engage in physical… abuse."

61. "Physical abuse" includes conduct like "Reckless Endangerment" as defined in ORS 163.195 and "Criminal Mistreatment in the Second Degree" as defined in ORS 163.200. *See* ORS 124.100(4) (incorporating ORS 124.105–Physical abuse subject to action).

62. A "vulnerable person" is someone who is "incapacitated" or with "a disability who is susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury because of the person's physical or mental impairment." ORS 124.100(1)(e)(C), (D).

63. Mr. Smith was clearly incapacitated and was incapable of taking care of his own needs at the time of his arrest. Mr. Smith was also a person with mental health disabilities, including schizoaffective disorder, schizophrenia, and bipolar disorder.

64. As alleged above, Defendants and Defendant City of Coos Bay agents subjected Mr. Smith to abhorrent, abusive treatment that resulted in physical injury and death.

65. Defendants and Defendant City of Coos Bay abuse caused Mr. Smith's death. Accordingly, Plaintiffs are entitled to treble economic and non-economic damages in an amount to be proven at trial, and reasonable attorney's fees. ORS 124.100(2)(a)-(c).

### REASONABLE ATTORNEY'S FEES AND COSTS

66. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

67. ORS 124.100(2)(a)-(c) allows reasonable attorney's fees in actions brought under ORS 124.100.

68. Plaintiff requests that the Court grant reasonable attorney's fees in this action.

### DEMAND FOR JURY TRIAL

69. For all claims alleged in this Complaint, Plaintiff demands a jury trial.

### CONCLUSION

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.  For economic and non-economic damages in an amount to be determined at trial on all claims;

B.  For reasonable attorneys' fees and costs on Claim 1 under 42 U.S.C. § 1988;

C.  For treble damages and reasonable attorney's fees on Claim 2: Count 3 under ORS 124.100(2)(a)-(c); and

D.  Such other relief as the court deems just and proper.

DATE: August 6, 2025.August 6, 2025

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Oregon Justice Resource Center
Of Attorneys for Plaintiffs

*LEAD ATTORNEY*